NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**CASSADY A. ADAMS, CO Bar #48807**
Assistant United States Attorney
Cassady.Adams@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:21-cr-00290-MO |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| COLE RICHARD KILLION, | |
| Defendant. | |

Introduction

The defendant, Cole Richard Killion, is before the Court for sentencing following entry of a guilty plea to the charges of possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi); and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Killion was a drug dealer found in

possession of approximately 2,000 counterfeit oxycodone pills (fentanyl), as well as distributable quantities of methamphetamine, heroin, and cocaine, and two firearms.

The United States recommends a sentence of 84 months custody, followed by four years of supervised release. The government believes that the requested sentence will ensure the safety of the community and hold Killion accountable for his conduct.

### Factual Background

A.   **The Offense Conduct**

In March 2021, Homeland Security Investigations (HSI) initiated an investigation into fentanyl distributors in the Portland, Oregon area. PSR ¶ 18. Through various investigative techniques, including an interview, a review of CashApp records, phone records, bank records, and a trash search, HSI learned that Killion was engaged in drug trafficking—specifically, counterfeit oxycodone pills. PSR ¶¶ 18-25. For example, between December 2020 and February 2021, Killion's bank account had 24 cash deposits that totaled over $33,000 and thirteen electronic funds transfers that totaled approximately $23,000, which was inconsistent with Killion's apparent employment status. PSR ¶ 25.

On August 4, 2021, HSI executed a federal search warrant on Killion's residence in Tigard, Oregon, where he was living with his parents. PSR ¶¶ 26-33. That day, Killion walked out of the house carrying a rectangular case with over 500 counterfeit oxycodone pills (suspected to contain fentanyl) and drug paraphernalia, among other things. PSR ¶¶ 26-27. A photograph of the pills seized from the container Killion was carrying is included below for the Court's reference:



In Killion's area of the home, investigators found approximately 1,500 counterfeit oxycodone pills (fentanyl)[1], 187.08 net grams of a substance containing heroin and fentanyl, 345.07 net grams of methamphetamine, and 501.21 net grams of cocaine. PSR ¶¶ 31-32. A photograph of the seized pills (on the left), methamphetamine (in the center), and heroin (on the right) from Killion's safe is included below for the Court's reference:

/ / /

/ / /

/ / /

---

[1] The Oregon State Police Lab tested a sample of these pills and confirmed the presence of fentanyl. PSR ¶ 31.

**Government's Sentencing Memorandum**　　　　　　　　　　　　　　　　　　　　　**Page 3**



Investigators also found two firearms and ammunition. PSR ¶ 33. The firearms were in Killion's bedroom, in close proximity to the drugs and paraphernalia. PSR ¶ 33. Photos the seized firearms are included below for the Court's reference:



At the time of the search warrant, Killion refused to comply with investigators' directives to unlock his phone pursuant to the warrant. PSR ¶ 34.

Killion was arrested, and on August 17, 2021, a federal grand jury returned an indictment charging Killion with possession with intent to distribute fentanyl, possession with intent to

/ / /

/ / /

**Government's Sentencing Memorandum**                                                                                                              **Page 4**

distribute methamphetamine, possession with intent to distribute heroin, possession with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking offense. ECF 5.

Thereafter, as discussed at the most recent detention hearing for this case, ECF 54, while in custody, Killion asked other individuals to encourage his mother to claim responsibility for the firearms at issue in his case. *See* ECF 53 (Ex. 4 & 5 to Gov't Response [ECF 51], conventionally filed audio exhibits).[2] For example, on a call on October 15, 2021, Killion directed a female to have his mother fill out the forfeiture claim paperwork for the guns:

> KILLION: So, I got the, uh, I got something that's due, by the 18th so it should be Monday, the last day for, uh, it's important that, uh, it's so hard to explain anything to my folks, they're just, you know, I don't know, kind of like Neanderthalish.
>
> FEMALE: [unintelligible sound]
>
> KILLION: Uh. [unintelligible sound]. There's paper for seizure and forfeitures.
>
> FEMALE: Hold on a second. What now?
>
> KILLION: Paper for seizures and forfeitures.
>
> FEMALE: Okay. So seizures?
>
> KILLION: Like, they seized some shit, and they, they're asking if I want to claim it or forfeit it. Uh part of that, uh, my mother needs to fill out half of it. For her claim.
>
> FEMALE: Okay.
>
> KILLION: The rest, the rest I'm just, uh, putting in forfeiture. But uh. . . .
>
> FEMALE: Okay, does she have the paperwork?

---

[2] Ultimately, Killion's mother did not make a claim for the guns, however.

**Government's Sentencing Memorandum** Page 5

KILLION: She has the paperwork, yeah.

FEMALE: So you need me to get ahold of her to help her complete the paperwork?

KILLION: Yeah, and uh, and uh. . . .

FEMALE: [describes how she is busy]

KILLION: [describes how he is displeased with his counsel]

. . .

KILLION: . . . Anyway the forfeiture is for the fuckin, uh, the, everything else is gonna be forfeited, but the fuckin, uh, the rifle, and shit that was found in the house, she can claim that, you know?

FEMALE: Right, yeah, she was trying [unintelligible]—

KILLION: . . . . Because, because that, because, that you know, it's hers, you know what I mean?

FEMALE: Right, right, right.

KILLION: Yeah yeah yeah, I could explain so much more, but, you know, yeah. So, she needs to claim those. I don't care, the money she can forfeit, but, it's, uh, uh, anyways . . . [goes on to discuss his case, his counsel, and other issues].

. . . .

KILLION: . . . I'll tell you what is uh, uh, is vital is on the 18th, will be the last day, and she's gonna have to call that number on the paper and take claim to that. Cuz I can explain to you later, but—

FEMALE: Right, right. I understand. I understand. I will tell her to fill out this paperwork she needs to fill out. [ ] and I will go talk to her . . . go over there and help her with it.

KILLION: And you know, tell her I said so, and not, don't trip. You know what I mean?

ECF 53, Ex. 4 at 2:58-6:50, 15:15-15:56.

### B.    The Plea Agreement & Guideline Computations

On October 12, 2022, Killion pleaded guilty to Counts One and Two of the indictment in this case, possession with intent to distribute fentanyl and possession with intent to distribute methamphetamine. PSR ¶¶ 1-2. Killion's total offense level is 29, and his criminal history category is II. PSR ¶ 51, 60. This results in a guideline calculation of 97-121 months custody. PSR ¶ 103. Killion has accepted responsibility in this case. He faces a mandatory minimum term of 60 months custody on both counts, and pursuant to the plea agreement, he may argue for a custodial sentence as low as 60 months. PSR ¶¶ 14, 102.

Also, in accordance with the plea agreement, the government recommends the applicable downward departures for acceptance of responsibility under USSG § 3E1.1 and requests that the Court impose a sentence of 84 months custody on both counts, to run concurrently, followed by four years of supervised release. PSR ¶ 14.

### Argument

### A.    18 U.S.C. 3553(a) Sentencing Factors

There are general factors that district courts must take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the need for the sentence imposed" to serve purposes of the criminal laws;

(3) "the kinds of sentences available;"

(4) "the kinds of sentence and the sentencing range" established by the guidelines;

(5) "any pertinent policy statement" issued by the Commission;

(6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and

(7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Many of the § 3553(a) factors warrant the sentence requested by the government in this case, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to serve the purposes of our criminal laws. Those purposes include "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment . . . afford adequate deterrence . . . protect the public . . . ." and to provide needed education, training, treatment, and care to the defendant. 18 U.S.C. § 3553(a)(2).

### B. Nature and Circumstances of the Offense / Defendant's History and Characteristics

In this case, Killion was involved in drug trafficking and apprehended with distributable quantities of fentanyl, methamphetamine, heroin, and cocaine, as well as two firearms and ammunition. PSR ¶¶ 22-33. Killion also behaved in a noncompliant manner following his apprehension with the drugs. *See* PSR ¶ 34; ECF 53.

This case is not Killion's first drug felony conviction; indeed, Killion has two prior drug felony convictions for possession of heroin from 2010, PSR ¶¶ 55,56, as well as a prior felony conviction for delivery of heroin from 2011. PSR ¶ 57. Killion also has a history of

noncompliance with court orders and supervision, to include a conviction for violation of a restraining order from 2016 and a failure to appear conviction from 2019. PSR ¶¶ 55-59.

As described in the presentence report, Killion had the kind of upbringing and childhood that any person could want, with a supportive family and a good home. PSR ¶¶ 69-71. Nonetheless, Killion's decisions have led him to the instant case. While Killion's addiction undoubtedly played a role in his crimes in this case, *see* PSR ¶ 93, his choice to partake in drug dealing was willful and voluntary.

A sentence of 84 months custody, followed by four years of supervised release, takes into consideration all of the aforementioned circumstances of the offense, and the history and characteristics of Killion.

### C. Need for the Sentence Imposed to Serve the Purpose of the Criminal Laws

The government's requested sentence (84 months custody, followed by four years of supervised release) would properly serve the purpose of the criminal laws.

#### 1. Seriousness of the Offense

The requested 84-month sentence is appropriate, considering the nature of this crime. As explained above, the offense in this case was serious because of the dangerous nature of the drugs Killion was trafficking—particularly the fentanyl—combined with the firearms he was in possession of. As the Court is fully aware, fentanyl is a controlled substance that can be lethal in even very small doses. Furthermore, the OSP crime lab found that the heroin in this case was laced with fentanyl, PSR ¶ 31, making it all the more dangerous to a person who could have unknowingly consumed it. Additionally, the presence of the firearms creates a heightened dangerousness for the drug trafficking conduct.

### 2. Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence.

The sentence of 84 months custody promotes respect for the law, provides just punishment, and affords adequate deterrence. Killion has previously been convicted for selling heroin, PSR ¶ 57, yet his drug trafficking conduct persisted in this case. Additionally, Killion's conduct showed a disregard for others—including his parents, with whom he was residing. The sentence of 84 months custody holds Killion accountable for his behavior without unduly punishing him.

### 3. Protect the Public

The requested sentence will protect the public while Killion is in custody because he will not be able to readily sell drugs in the community. When Killion is released from custody, he will face consequences, such as additional prison time, if he does not comply with his supervised release conditions or commits new crimes.

### 4. Provide Training, Treatment, and Care to the Defendant

Killion will be able to receive needed drug treatment while serving his sentence for this case, including while on supervised release. The requested four-year period of supervised release will be necessary to help Killion receive the treatment and resources he needs so that he can find gainful, lawful employment and so that he does not commit future crimes.

/ / /

/ / /

/ / /

**Conclusion**

Based on the foregoing, the government recommends the Court impose a sentence of 84 months' imprisonment, followed by a four-year term of supervised release, subject to the standard and special conditions, and a $100 fee assessment.

Dated: November 30, 2022                                       Respectfully submitted,

                                                                                        NATALIE K. WIGHT,
                                                                                        United States Attorney

                                                                                        /s/ Cassady A. Adams
                                                                                        CASSADY A. ADAMS, CO Bar #48807
                                                                                        Assistant United States Attorney